BETTY COOKE, Employee, Plaintiff v. P.H. GLATFELTER/ECUSTA, Employer, SELF-INSURED, Alexsis Risk Management Services, Servicing Agent, Defendant

No. COA97-317

(Filed 21 July 1998)

### 1. Workers' Compensation— disability—sufficiency of evidence

The Industrial Commission's finding in a workers' compensation action that plaintiff is disabled was supported by the evidence where plaintiff was examined by four physicians, all of whom testified that she suffered from ongoing psychological disorders caused by her injury and that these disorders in turn decreased her ability to use her right hand, there was evidence that plaintiff suffered mild cognitive impairment, and the physicians believed that plaintiff was rendered incapable of earning the same wages she was receiving at the time of her injury. Although defendant argued that the evidence was insufficient to show that plaintiff's disability was caused by her injury, the four doctors were all of the opinion that plaintiff's accident was responsible for her psychological condition.

### 2. Workers' Compensation— causation—reasonable degree of medical certainty

The use of the phrase "reasonable degree of medical certainty" in *Phillips v. U.S. Air, Inc.*, 120 N.C. App. 538, was merely a quotation from the Industrial Commission's order and did not establish a new and more onerous burden of proof for claimants.

### 3. Workers' Compensation— award of future medical expenses

The Industrial Commission's award of future medical expenses to a workers' compensation plaintiff was appropriate where there was ample evidence that plaintiff was in need of comprehensive rehabilitation and additional psychological

COOKE v. P.H. GLATFELTER/ECUSTA

[130 N.C. App. 220 (1998)]

treatment to lessen the period of her disability, effect a cure, or give relief.

**4. Workers' Compensation— attorney fees—reasonable ground to defend**

An Industrial Commission order in a workers' compensation case for defendant to pay attorney fees pursuant to N.C.G.S. § 97-88.1 was reversed where the evidence indicated that defendant had a reasonable ground to defend plaintiff's claim.

Judge TIMMONS-GOODSON concurring in part and dissenting in part.

Appeal by defendant from opinion and award entered 21 November 1996 by the North Carolina Industrial Commission. Heard in the Court of Appeals 19 November 1997.

*Ganly Ramer Finger Strom & Fuleihan, by Thomas F. Ramer, for plaintiff-appellee.*

*Hedrick, Eatman, Gardner & Kincheloe, L.L.P., by Edward L. Eatman, Jr. and Jennifer Ingram Mitchell, for defendant-appellant.*

LEWIS, Judge.

Defendant appeals from an adverse opinion and award of the North Carolina Industrial Commission. We reverse that portion of the award which requires defendant to pay attorney fees under N.C. Gen. Stat. § 97-88.1 (1991). In all other respects, we affirm.

The Commission's findings of fact are as follows. On 8 July 1994, plaintiff sustained a severe electric shock to her right forearm while operating a machine in the course of her employment with defendant. She was evaluated at a local hospital and was then transferred to Asheville for an evaluation by Dr. Lechner, a board-certified orthopedic surgeon specializing in hand surgery. Dr. Lechner diagnosed plaintiff with compartment syndrome with a median neuropraxia caused by abnormal pressure in the forearm. To prevent nerve damage, he performed surgery on her arm that night. She was released from the hospital the next day.

Plaintiff immediately returned to work but did not resume her regular duties. At first, plaintiff spent her workdays lying on a bed at defendant's factory. She cried frequently and was in significant pain.

On 13 July 1994, Dr. Lechner released plaintiff to do one-handed work and on 27 July 1994, Dr. Lechner allowed plaintiff to perform certain restricted duties with her right hand. Plaintiff was assigned light duties including filing, sweeping, and picking up litter. She continued to get upset easily and by 17 August 1994, when Dr. Lechner next saw her, she was so depressed she was having suicidal thoughts.

Dr. Lechner referred plaintiff to a psychologist, Dr. Sims, who saw her that day. Dr. Sims diagnosed plaintiff's condition as an adjustment disorder with depressed mood and immediately began providing therapy. He also sent her to her family doctor so that she might obtain antidepressant medication. Both he and Dr. Lechner excused plaintiff from work until her psychological problems were addressed. Although plaintiff never resumed her full work duties after she was injured, she reported to work and continued to receive her regular wages through 18 August 1994.

During the next month, the mobility of plaintiff's right hand significantly deteriorated and her fourth and fifth fingers began to draw up into a claw-like position. Plaintiff submitted a claim for workers' compensation but defendant denied liability. The Commission found that plaintiff's depression was aggravated by defendant's denial of liability and by plaintiff's having to perform light-duty tasks which she felt to be demeaning.

Plaintiff received occupational therapy from late July until the first of November, when therapy was discontinued. On 2 November 1994, Dr. Lechner evaluated plaintiff and ordered studies to rule out the possibility of nerve damage. The tests indicated that plaintiff was not suffering from nerve damage. In Dr. Lechner's opinion, the somewhat clawed position in which plaintiff was holding her hand could not be explained physiologically. Dr. Lechner came to believe that plaintiff was suffering from a psychogenic dyskinesia. When Dr. Lechner re-evaluated plaintiff in February 1995, he noted that her hand condition had not improved and he rated plaintiff with a twenty-five percent functional impairment of her right hand. He also released her to return to work with the restrictions that she not use her right hand to perform repetitive work or to lift more than one pound. Defendant had no available work within these restrictions.

Dr. Sims continued to provide psychological treatment for plaintiff from approximately 30 August 1994 to 15 June 1995. Dr. Sims was of the opinion that plaintiff's injury and subsequent psychological difficulties were a direct result of her 8 July 1994 accident, and that the

manner in which defendant treated her thereafter exacerbated plaintiff's condition.

In December 1994, at defendant's request, plaintiff was referred to Dr. Duffy for a psychological evaluation. Dr. Duffy diagnosed plaintiff with posttraumatic stress disorder and adjustment disorder with mixed anxiety and depressed moods. There were indications plaintiff was suffering from cognitive problems, so Dr. Duffy referred plaintiff to Dr. Manning, a neuropsychologist. Plaintiff underwent extensive testing by Dr. Manning in the summer of 1995. The tests revealed mild cognitive impairment consistent with a closed head injury or an electrical shock. Both Dr. Manning and Dr. Duffy recommended that plaintiff undergo a comprehensive rehabilitation program, but there is no evidence that defendant ever provided such a program.

On 7 November 1994, plaintiff requested that her claim be assigned for hearing by filing a Form 33 with the Industrial Commission. The Form 33 indicated that plaintiff believed she was entitled to permanent partial disability payments. The parties stipulated that plaintiff sustained an injury by accident arising out of and in the course of employment on 8 July 1994, and that plaintiff's last day of work for defendant was 18 August 1994.

Plaintiff prevailed at the hearing before the deputy commissioner and defendant appealed to the Full Commission. The Commission awarded plaintiff temporary total disability benefits from 19 August 1994 until such time as she is no longer totally disabled. Defendant was ordered to pay medical expenses incurred as a result of the 8 July 1994 injury, an expert witness fee, and costs. Defendant was also ordered to pay an attorney fee of $2,000.00 pursuant to N.C. Gen. Stat. § 97-88 (1991), and an attorney fee of $9,000.00 pursuant to N.C. Gen. Stat. § 97-88.1 (1991). Defendant appeals.

Defendant has abandoned assignments of error 3, 9, 11, and 15 by failing to set them out in its brief. N.C.R. App. P. 28(b)(5).

[1] Defendant argues that the finding that plaintiff is disabled is not supported by the evidence. We disagree. Plaintiff was examined by four physicians, all of whom testified that she suffered from ongoing psychological disorders caused by her injury, and that these disorders in turn decreased her ability to use her right hand. There was also evidence that plaintiff suffered mild cognitive impairment. The physicians believed that plaintiff was rendered incapable of earning

the same wages she was receiving at the time of her injury. This testimony was sufficient to support a finding of disability.

Defendant argues that even if plaintiff was suffering from disabling psychological disorders, the evidence was insufficient to show that her disability was caused by her workplace injury. Defendant correctly observes that causation may be proven only by evidence that " 'indicate[s] a reasonable scientific probability that the stated cause produced the stated result.' " *Phillips v. U.S. Air, Inc.*, 120 N.C. App. 538, 542, 463 S.E.2d 259, 262 (1995) (quoting *Hinson v. National Starch & Chemical Corp.*, 99 N.C. App. 198, 202, 392 S.E.2d 657, 659 (1990)), *aff'd per curiam*, 343 N.C. 302, 469 S.E.2d 552 (1996). Defendant argues that the evidence in this case was insufficient to prove causation. We disagree. Drs. Sims, Duffy, and Manning were all of the opinion that plaintiff's 8 July 1994 accident was responsible for her psychological condition. Their testimony was hardly the "mere conjecture" about causation that was rejected in *Phillips* and *Hinson*.

[2] Defendant suggests that causation must be established to a "reasonable degree of medical certainty," based on dictum from the *Phillips* case. *See Phillips*, 120 N.C. App. at 542, 463 S.E.2d at 262. When it used the phrase "reasonable degree of medical certainty," however, the *Phillips* court was merely quoting language from the Industrial Commission's order in that case. The *Phillips* court did not thereby establish a new and more onerous burden of proof for claimants, and any implication to the contrary is hereby rejected.

[3] Defendant next argues that plaintiff is not entitled to compensation for future medical expenses for any physical or psychological incapacities that arose from plaintiff's 8 July 1994 injury by accident. If the Industrial Commission determines that continuing medical treatment is necessary, it may, in its discretion, order such treatment and require the employer to pay for it. N.C. Gen. Stat. § 97-25 (1991). In this case, there was ample evidence that plaintiff is in need of comprehensive rehabilitation and additional psychological treatment to lessen the period of her disability, effect a cure, or give relief. The Commission's award of future medical expenses to plaintiff was therefore appropriate.

[4] Finally, defendant disputes the Commission's award of $9,000.00 in attorney fees under N.C. Gen. Stat. § 97-88.1 (1991). Section 97-88.1 states in relevant part, "If the Industrial Commission shall determine

COOKE v. P.H. GLATFELTER/ECUSTA

[130 N.C. App. 220 (1998)]

that any hearing has been . . . defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for . . . plaintiff's attorney upon the party who has . . . defended them." Defendant argues that it had a reasonable ground to defend itself at the hearing in this case. We agree.

In determining whether a hearing has been defended without reasonable ground, the Commission (and a reviewing court) must look to the evidence introduced at the hearing. "The test is not whether the defense prevails, but whether it is based in reason rather than in stubborn, unfounded litigiousness." *Sparks v. Mountain Breeze Restaurant*, 55 N.C. App. 663, 665, 286 S.E.2d 575, 576 (1982). The evidence in this case indicates that defendant had a reasonable ground to defend against plaintiff's claim for permanent partial disability beginning 8 July 1994.

The testimony of Dr. Lechner supports a finding that, sometime between August and November of 1994, any disability to plaintiff's right hand was no longer physiological. In addition, the Commission could have found that any psychological disorders resulting from the injury to plaintiff's arm were not disabling.

Disability is the "incapacity because of injury to earn the wages which the employee was receiving at the time of the injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (Cum. Supp. 1997). It may be proved by evidence that (1) the employee is physically or mentally incapable of work in any employment as a result of the injury; (2) the employee is capable of some work but, after reasonable efforts, has been unsuccessful in obtaining other employment; (3) the employee is capable of some work but it would be futile to seek it out because of preexisting conditions such as age, inexperience, lack of education; or (4) the employee has obtained employment at a wage less than that earned prior to the injury. *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).

There is no evidence that plaintiff obtained work at a wage less than what she earned before 8 July 1994, or that a search for other employment would have been futile because of a preexisting condition. Based on the testimony in this case, the Commission could have found that plaintiff was not completely disabled by her psychological disorders, and that plaintiff did not make reasonable efforts to secure other employment. We hold that defendant had a reasonable ground on which to defend itself at the hearing. We therefore reverse the

Commission's order for defendant to pay attorney fees totaling $9,000.00 pursuant to N.C. Gen. Stat. § 97-88.1.

Affirmed in part and reversed in part.

Judge WALKER concurs.

Judge TIMMONS-GOODSON concurs in part and dissents in part.

Judge TIMMONS-GOODSON concurring in part, and dissenting in part.

I concur with that portion of the majority opinion which affirms the opinion and award of the Industrial Commission. However, I disagree with the majority's conclusion that defendant had a reasonable ground on which to defend itself at the hearing on this matter, and therefore, respectfully dissent from that portion of the majority opinion reversing the Commission's award of attorney's fees pursuant to section 97-88.1 of the General Statutes.

A defendant may be penalized under section 97-88.1 of the North Carolina General Statutes for stubborn, unfounded litigious defense of claims, which is inharmonious with the primary purpose of the Workers' Compensation Act to provide compensation to injured employees. *Troutman v. White & Simpson, Inc.*, 121 N.C. App. 48, 54, 464 S.E.2d 481, 485 (1995), *disc. review denied*, 343 N.C. 516 (1996); *Sparks v. Mountain Breeze Restaurant*, 55 N.C. App. 663, 286 S.E.2d 575 (1982); *see also* N.C. Gen. Stat. § 97-88.1 (1991).

The majority reverses the Commission's award of attorney's fees based upon the supposition that "the Commission could have found that plaintiff was not completely disabled by psychological disorders, and that plaintiff did not make reasonable efforts to secure other employment." I disagree.

As the majority points out, disability may be proved in one of four ways. *See Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993), *limited by Kisiah v. W.R. Kisiah Plumbing*, 124 N.C. App. 72, 476 S.E.2d 434 (1996). In this case, plaintiff has established her disability by presenting compelling evidence that she is unable to work in any employment as a result of her injury. Having established her disability in this regard, defendant's litigousness becomes no less unfounded simply because plaintiff chose not to establish her disability in any other manner. This Court noted in

COOKE v. P.H. GLATFELTER/ECUSTA

[130 N.C. App. 220 (1998)]

*Sparks* that an employer with a legitimate doubt about its employee's credibility, based on substantial evidence of conduct by the employee inconsistent with her alleged claim, will not be held to have acted unreasonably under section 97-88.1. *See Sparks*, 55 N.C. App. at 664, 286 S.E.2d at 576. In the present case, defendant had no "substantial" evidence of conduct by plaintiff which was inconsistent with her claim of disability, and therefore, I would not excuse defendant's unreasonable behavior.

Upon plaintiff's release from the hospital after the 8 July 1994 accident, defendant encouraged plaintiff to return to work, ostensibly, so that her wages would not be interrupted. However, defendant was unable to furnish plaintiff with any meaningful employment. Instead, plaintiff was made to lie in the locker room and later the medical department for two and one-half weeks. Thereafter, she was assigned to light duty work, which consisted of picking up litter in the company break room. Essentially, from the time of her release from the hospital on or about 10 July until 17 August 1994, plaintiff did not perform any "meaningful work." During this time period, plaintiff was noted by her supervisor to be very teary, and to throw up often. Defendant, however, was seemingly oblivious to plaintiff's need to be separated from the work environment and to be compensated for her injury. It was not until Drs. Lechner and Sims took her out of work that plaintiff was relieved of these menial tasks.

When defendant initially denied this claim, it had no medical or psychological information that plaintiff's psychological symptoms were not related to her electric shock of 8 July 1994. In fact, Dr. Sims in a 30 September 1994 letter to defendant's personnel director stated, "I feel that Ms. Cooke's injury and subsequent psychological difficulties are a direct result from of [sic] injury. . . . [and] that the manner in which [she] is being dealt with is exacerbating her situation and is unjustified." Further examination by an independent psychologist and neuropsychologist hired by defendant resulted in similar opinions. Defendant steadily denied all of the medical and psychological evidence, and reached back to plaintiff's sister's suicide to find causation for the deterioration of plaintiff's physical and psychological health. Medical prompting to enroll plaintiff in a rehabilitation program went unheeded by defendant. Defendant points to a private investigator's testimony and videotapes in support of its contentions that plaintiff performed tasks outside of Dr. Lechner's restrictions. Notably, the private investigator was not hired until six months after the denial of plaintiff's claim and several months after

defendant's independent psychological evaluation confirming the diagnosis and opinion of Dr. Sims as to the cause of plaintiff's psychological condition. Moreover, the tapes submitted by defendant are unclear and are not the "substantial" evidence needed to support defendant's claim that plaintiff is able to use the hand in other than a "claw-like" position.

Based upon defendant's treatment of plaintiff after her injury on the job and defendant's subsequent refusal to pay, I maintain that defendant's conduct is precisely the type of employer stubbornness that section 97-88.1 was intended to punish. I would, therefore, respectfully dissent from that part of the majority opinion reversing the award of attorney's fees based upon defendant's "stubborn, and unfounded litigiousness."