DIETZ, Judge.
The crux of this case is whether Bobbie Easley qualifies as a "widow" under the Workers' Compensation Act. Bobbie Easley was married to Ronald Easley for nine years until his death in 2012. Several years before Mr. Easley's death, Mrs. Easley left the family home and began living apart from her husband. She testified that she left because Mr. Easley told her he did not love her anymore and she should leave, although Mr. Easley's son, Noah Owen Easley, testified that he believed the decision to separate was a mutual one. Mrs. Easley also suffered from mental illness and heard voices that, on at least one occasion, told her to kill her husband.
Mrs. Easley cared for herself after she left and did not rely on Mr. Easley for any financial or personal assistance. Indeed, the two barely spoke after Mrs. Easley left and had not had any contact for more than a year before Mr. Easley died in an automobile accident at work.
In Mr. Easley's workers' compensation case, the Industrial Commission concluded that his death benefits should go to his minor son because Mrs. Easley did not satisfy the definition of a "widow" under the Workers' Compensation Act. To be a "widow" under the Act, the decedent's wife must be "living with or dependent for support upon him at the time of his death; or living apart for justifiable cause or by reason of his desertion at such time." N.C. Gen.Stat. § 97-2(14) (2013).
We affirm the Industrial Commission's Opinion and Award. The Commission's findings of fact are supported by competent evidence in the record, including the testimony of Mrs. Easley, the testimony of Mr. Easley's son, and medical records documenting Mrs. Easley's homicidal thoughts toward her husband as a result of mental illness. The Commission's conclusions of law are supported by those fact findings. Accordingly, we must affirm the Commission's Opinion and Award.
Facts and Procedural History
On 17 January 2003, Bobbie Easley married Ronald Easley. They lived together in Salisbury, North Carolina along with Mr. Easley's minor son. They both had children from previous relationships but had no children of their own during the marriage.
In October 2009, Mrs. Easley moved out of the family home and went to live with her daughter. Mrs. Easley stated that she moved out of the home because "[Ronald] told [her] to get out" and he "did not love [her] anymore." She said she did not want to leave the home because she "still loved him," but she was "instructed to leave," so she "packed up and left." Mr. Easley's son testified that the decision to live apart was a "mutual agreement" between Mr. and Mrs. Easley.
Mr. and Mrs. Easley never legally separated or divorced, although the couple lived apart since 2009. Mrs. Easley never sought any financial support from Mr. Easley after she left and Mr. Easley did not provide any.
Mrs. Easley suffers from bipolar disorder, a condition with which she was diagnosed after she married Mr. Easley. Throughout their marriage, Mrs. Easley suffered from paranoia, anxiety, depression, suicidal and homicidal thoughts, and hearing voices. On at least one occasion, Mrs. Easley heard voices telling her to kill her husband.
On 25 April 2012, Mr. Easley was killed in a compensable motor vehicle accident while working as a truck driver for TLC Companies. The North Carolina Industrial Commission entered an Opinion and Award on 22 August 2014 concluding that Mrs. Easley did not meet the definition of a widow under the Workers' Compensation Act. The Commission awarded Mr. Easley's death benefits to his minor son. Mrs. Easley timely appealed.
Analysis
Mrs. Easley challenges a series of fact findings by the Industrial Commission and also challenges the Commission's conclusion that she did not qualify as a "widow" as defined in the Workers' Compensation Act.
"The standard of review for an opinion and award of the North Carolina Industrial Commission is (1) whether any competent evidence in the record supports the Commission's findings of fact, and (2) whether such findings of fact support the Commission's conclusions of law." Cox v. City of Winston-Salem,171 N.C.App. 112, 114, 613 S.E.2d 746, 747 (2005) (internal quotation marks omitted). "This Court's duty "goes no further than to determine whether the record contains any evidence tending to support the finding, without regard to whether there was evidence that would have supported contrary findings." Goodrich v. R.L. Dresser, Inc.,161 N.C.App. 394, 398, 588 S.E.2d 511, 514 (2003). "The Commission's findings of fact are conclusive on appeal when they are supported by competent evidence, even when there is evidence to support contrary findings." Faison v. Allen Canning Co.,163 N.C.App. 755, 757, 594 S.E.2d 446, 448 (2004).
I. Challenge to the Findings of Fact
Mrs. Easley first challenges five of the Industrial Commission's findings of fact. In an Opinion and Award in a workers' compensation case, the Industrial Commission "must make specific findings of fact as to each material fact upon which the rights of the parties in a case involving a claim for compensation depend." Johnson v. Herbi e's Place,157 N.C.App. 168, 172, 579 S.E.2d 110, 113 (2003). These "ultimate" facts found by the Commission cannot be mere recitations of the evidence; instead, the Commission must find the facts necessary to support its conclusions of law. Id.
As both Mrs. Easley and Defendants implicitly acknowledge (although neither side states expressly), four of the five findings challenged by Mrs. Easley are not proper findings of fact because they merely recite the testimony or evidence in the record, rather than finding the ultimate facts necessary to support the Commission's conclusions. Although we cannot rely on these purported findings in our review, the Commission's inclusion of those findings is not reversible error. As we have previously held, "[t]here is nothing impermissible about describing testimony, so long as the court ultimately makes its own findings[.]" In re C.L.C.,171 N.C.App. 438, 446, 615 S.E.2d 704, 708 (2005). As we observed in an administrative case involving similarly improper findings, "[w]hile there is some recitation of the evidence [in the trial court's findings], such as quotations from depositions and testimony, there are also sufficient ultimate findings of fact to determine the issues presented by the contested case."Overcash v. N.C. Dep't of Env't & Natural Res.,179 N.C.App. 697, 708, 635 S.E.2d 442, 450 (2006), aff'd,360 N.C. 475, 628 S.E.2d 760 (2006). Thus, we will disregard the unnecessary findings and examine whether the Industrial Commission's ultimate findings of fact are supported by competent evidence and whether those findings support the Commission's conclusions of law.
Here, the ultimate findings of fact are contained in Finding of Fact 16, in which the Commission found that "[a]lthough Bobbie Easley was married to Ronald Easley at the time of his death, she was neither living with him nor was she dependent upon him for support at the time of his death." The Commission further found that "[t]here is no evidence of record that Ronald Easley was abusive to Bobbie Easley nor any evidence of record that Ronald Easley had a drinking problem." Finally, the Commission found that "Ronald Easley did not abandon and/or desert Bobbie Easley" and that "Bobbie Easley was not living apart from Ronald Easley for justifiable cause."
These ultimate findings are supported by competent evidence in the record. There is evidence in the record that at the time of Mr. Easley's death, Mrs. Easley neither lived with Mr. Easley nor was dependent on him. During the hearing, Mrs. Easley stated multiple times that she moved out of the home several years before Mr. Easley's death. Mrs. Easley never asked Mr. Easley for financial support after she left the marital home and he did not provide any to her. Mrs. Easley testified that the last time she spoke with or even saw Mr. Easley was in August or September of 2011, nearly a year before his death. Thus, there is competent evidence to support the Commission's finding that Mrs. Easley was not dependent on Mr. Easley.
There also is evidence in the record to support the Commission's finding that Mr. Easley did not abandon or desert Mrs. Easley. In the family law context, a desertion or abandonment "occurs when one spouse brings the cohabitation with the other spouse to an end without justification, without the consent of the other spouse and without intent of renewing it." Corbett v. Corbett,67 N.C.App. 754, 755, 313 S.E.2d 888, 889 (1984). There is some competent evidence in the record indicating that Mr. Easley did not bring the cohabitation to an end. Mr. Easley's son testified that the couple lived apart as the result of a "mutual agreement." Our review of the Commission's findings "goes no further than to determine whether the record contains anyevidence tending to support the finding, without regard to whether there was evidence that would have supported contrary findings." Goodrich,161 N.C.App. at 398, 588 S.E.2d at 514 (emphasis added). The testimony of Mr. Easley's son provides competent evidence to affirm the Commission's findings.
In any event, even if Mr. Easley had unilaterally forced his wife out of the home, there still was competent evidence supporting the Commission's findings. Leaving one's spouse is not considered abandonment or desertion if the conduct of the non-withdrawing spouse "is such as would likely render it impossible for the withdrawing spouse to continue the marital relation with safety, health, and self-respect." Caddell v. Caddell,236 N.C. 686, 690-91, 73 S.E.2d 923, 926 (1953). Here, there is evidence in the record that Mrs. Easley suffered from a mental condition that caused her to experience suicidal and homicidal thoughts. Her medical records indicate that she expressed homicidal intent toward Mr. Easley because "the voices were telling [her] to." This evidence likewise provides competent evidence to support the Commission's finding concerning desertion.
Finally, there is evidence in the record supporting the Commission's finding that Mrs. Easley was not living apart from Mr. Easley for justifiable cause. This Court has held that the relevant time period for determining justifiable cause is "the months immediately preceding [the husband's] death." Rogers v. University Motor Inn,103 N.C.App. 456, 461, 405 S.E.2d 770, 773 (1991) (internal quotation marks omitted). But this Court also has held that the Commission "must consider the complexity and history of the particular relationship in order to determine whether the appellant was separated for justifiable cause." Id.
Here, Mr. and Mrs. Easley did not have any communication in the year before his death, so there is no behavior by Mr. Easley toward Mrs. Easley to examine in the months leading up to his death. Even if the Commission were to go back further, and examine the couple's relationship years earlier, there is no evidence in the record of any abuse or misconduct by Mr. Easley that would justify Mrs. Easley living apart from her husband. And, again, there was competent evidence indicating that the parties' decision to live apart was a mutual one, and that Mrs. Easley suffered from a mental condition that caused her to hear voices telling her to kill her husband. Thus, there is competent evidence in the record to support the Commission's findings.
Finally, Mrs. Easley argues that the Commission failed to consider the "totality of the circumstances" as required by this Court's decision in Rogers.103 N.C.App. at 461, 405 S.E.2d at 773. Specifically, Mrs. Easley argues that the Commission's finding concerning justifiable cause ignored "the history of the relationship" between Mr. and Mrs. Easley and the fact that "Mr. Easley, with full awareness of [Mrs. Easley's] psychological condition, threw her out of the house and told her he did not love her." We disagree. The Commission stated that its findings were based on "the evidence in view of the entire record" and nothing in the Commission's Opinion and Award suggests that the Commission ignored any of the evidence before it. Instead, the Commission considered Mrs. Easley's evidence but found other evidence to be more compelling on these issues, as it is entitled to do as the finder of fact. Faison,163 N.C.App. at 757, 594 S.E.2d at 448. Accordingly, we reject Mrs. Easley's argument.
Conclusion
The Industrial Commission's findings of fact are supported by competent evidence, and those findings, in turn, support the Commission's conclusion that Mrs. Easley does not qualify as a widow under the Workers' Compensation Act. Accordingly, we affirm the Industrial Commission's Opinion and Award.
AFFIRMED.
Report per Rule 30(e)
Judges BRYANT and STEPHENS concur.
Opinion
Appeal by appellant from opinion and award entered 22 August 2014 by the North Carolina Industrial Commission. Heard in the Court of Appeals 2 June 2015.